# COE *v.* BROWN.

---

PATENTS; INTERFERENCE; CONSTRUCTION OF ISSUE.

In an interference relating to blowers for blowing off the accumulated ash and soot from the tubes of water-tube boilers of the inclined tube type, where the counts of the issue call for a soot blower having means for causing the nozzles to follow the direction of the tubes, the device of the junior party was *held* not to meet the requirements of the issue, as it contained no means in the blower itself for causing the nozzles to perform the required function, but accomplished that purpose only by external means such as by resting them on the tubes.

No. 1012. Patent Appeals. Submitted January 17, 1916. Decided February 7, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. L. S. Bacon* and *Mr. J. H. Milans* for the appellant.

*Mr. Lewis B. Bridges, Mr. Arthur F. Durand,* and *Messrs. Davis & Davis* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to appellee, Gideon P. Brown, on the following counts:

"1. In a soot blower for water-tube boilers having inclined tubes, a set of nozzles arranged one above the other in vertical series, and means for causing said nozzles to follow the direction of the tubes, whereby said nozzles swing in planes oblique to the said vertical series arrangement thereof, there being a vertical supply pipe to which said nozzles are suitably connected.

"2. In a soot blower for water-tube boilers having inclined tubes, a set of nozzles arranged one above the other in vertical series, and means for causing said nozzles to follow the direction of the tubes, whereby said nozzles swing in planes oblique to the said vertical series arrangement thereof, there being a wall for inclosing said boiler having a vertical opening in the side thereof, and a vertical supply pipe disposed at said opening, suitably connected with said nozzles.

"3. In a soot blower for water-tube boilers having inclined tubes, a set of nozzles arranged one above the other in vertical series, and means for causing said nozzles to follow the direction of the tubes, whereby said nozzles swing in planes oblique to the said vertical arrangement thereof, and means for moving the said nozzles toward and away from the boiler.

"4. In a soot blower for water-tube boilers having inclined tubes, a vertical header, a set of movable nozzles for said vertical header, arranged one above the other, and means for causing said nozzles to follow the direction of the tubes, whereby said nozzles swing in planes oblique to the said vertical header."

The invention here in issue is a blower for blowing off the accumulated ash and soot from the tubes of a water-tube boiler, and is intended for use in boilers of the "inclined tube type,"

in which the tubes are arranged in rows and extend obliquely from the fire box upwardly, or *vice versa.* Briefly stated, the invention consists of a series of nozzles carried by a header or standpipe, the nozzles being projected through openings in the boiler in such manner as to direct steam jets between the tubes for the purpose of removing soot and ash accumulated thereon. The primary object of this invention is to provide means by which the nozzles will follow the line of the tubes, thus causing the steam jets to be at all times directed between them. This is accomplished in appellee's device by providing the header or standpipe with a cam at its base, which causes such header or standpipe and the nozzles carried thereby, when oscillated by the turning of a handle on the header, to rise and fall sufficiently to properly direct the steam jets. In appellant's device, as shown in figures 1, 2, and 3 of the drawings accompanying his specification, the nozzles project into the boiler through a ball and socket joint, and extend therein a sufficient distance to permit each nozzle to rest upon the first tube of each row or series. The header or standpipe is supported by a spring and caster arrangement which, together with the ball and socket joint, permits of the free movement of the header and the nozzles connected therewith. Thus, when the blower is operated, causing the nozzles to oscillate, they will be guided by the inclination of the tubes and direct the steam jets between them. In figure 4 of appellant's drawing is shown a modification in which the header or standpipe is fitted with guide rollers which operate upon inclined guide rails, thereby accomplishing the desired purpose without the necessity of resting the nozzles upon the tubes.

Appellee is the senior party, having filed his application December 9, 1910. He stands upon that date as his date of conception, disclosure, and reduction to practice. Appellant, Charles T. Coe, filed his application June 3, 1911, but has introduced evidence which he contends establishes a reduction to practice of the invention here in issue prior to the filing date of appellee. It is unnecessary to consider the sufficiency of this testimony, since it is conceded by appellant that the prior device conforms

to the form shown in figures 1, 2, and 3 of appellant's drawings, and not to that shown in figure 4. We are therefore met with the question whether or not this device fulfils the requirements of the issue. This question was answered in the negative by all of the tribunals below.

All of the counts of the issue call for "a soot blower having * * * means for causing said nozzles to follow the direction of the tubes." Appellant contends that this requirement is met by reason of the presence of his ball and socket joint for the nozzles, and his spring and caster arrangement supporting the header or standpipe, which permit the nozzles to swing in various directions and follow the line of the tubes when guided thereby. But there is no element in the blower itself which will cause the nozzles to perform the required function. This purpose is accomplished only by resting them upon the tubes. The same result, however, is attained, without the necessity of resorting to external means, by the cam of appellee's device or the inclined guide rails of appellant's, as shown in his figure 4, both of which are elements forming parts of the respective blowers. We agree with the tribunals of the Patent Office that the counts must be restricted to means within the blower itself. Appellant having introduced no evidence to establish a conception, prior to the filing of his application, of a device corresponding to the terms of the issue, priority of invention must be awarded to appellee.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                        *Affirmed.*